# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDY ORTIZ,                :
     *Plaintiff,*         :
                     :
    v.                :      CIVIL ACTION NO. 21-CV-3104
                     :
LT. HORSEY, *et al.*,       :
     *Defendants.*      :

## MEMORANDUM

**PAPPERT, J.**                                          **January 11, 2022**

Andy Ortiz, a convicted prisoner[1] incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), commenced this civil action by filing a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (ECF No. 2.) He also filed a Motion for Leave to Proceed *in Forma Pauperis* and a prisoner account statement. (ECF No. 1, 9.) Ortiz subsequently filed an Amended Complaint (ECF No. 14) which serves as the operative pleading.[2] For the following reasons, Ortiz

---

[1] In his Complaint, Ortiz checked boxes indicating that he was a pretrial detainee and a civilly committed detainee (ECF No. 2 at 4.) Review of the publicly available docket reflects that on March 5, 2021, Ortiz pled guilty to rape of a child and related offenses. *Commonwealth v. Ortiz*, No. CP-51-CR-1258-2020 (C.P. Phila.) On October 7, 2021, while awaiting sentencing, Ortiz filed a motion to withdraw his guilty plea. That motion remains pending. (*Id.*) Thus, Ortiz was a pretrial detainee on February 24, 2021, the date the events giving rise to his claims are alleged to have occurred.

[2] *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)) )); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

will be granted leave to proceed *in forma pauperis*, and he will be permitted to proceed on his excessive force claims against Correctional Officers Bernett and Amazon, his failure to protect claims against Correctional Officers Petel, Tita, and Bailey, his deliberate indifference claims against Lt. Horsey and Sgt. White, and his due process claim against Major Martin. The remainder of his claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because Ortiz's official capacity claim will be dismissed without prejudice, Ortiz will be granted the option of filing an amended complaint to attempt to cure the defects discussed below or proceeding only on the claims that pass statutory screening.

I[3]

Ortiz's claims arise from events that allegedly occurred while he was incarcerated at the Philadelphia Industrial Correctional Center ("PICC"). (ECF No. 14 at 4.) Ortiz names the following Defendants: Lt. Horsey, Sgt. White, Correctional Officer ("CO") Bernett, Major Martin, CO Amazon, CO Petel, CO Tita, CO Bailey, Blanche Carney, the Philadelphia Department of Prisons, and the City of Philadelphia. (*Id.* at 1, 4.)

Ortiz alleges that on February 24, 2021, CO Bernett wrapped both hands around Ortiz's neck and squeezed and shook him violently. (*Id.* at 1.) He is also alleged to have pushed Ortiz to the ground. (*Id.*) Ortiz claims Bernett then pushed him around in his cell, demanding that Ortiz spit on him. (*Id.* at 2.) At or about the same time, CO Amazon allegedly punched Ortiz in the face 8 to 9 times while Ortiz was handcuffed

---

[3] The allegations set forth in this Memorandum are taken from Ortiz's Amended Complaint. The Court adopts the pagination assigned to the Amended Complaint by the EC/ECF docketing system.

and shackled.  (*Id.*)  Amazon also allegedly slammed Ortiz from door to door.  Ortiz

claims he suffered lumps and swelling on his face and a nosebleed as a result of Bernett

and Amazon's actions.  (*Id.*)  Ortiz claims that CO Petel watched Amazon assault Ortiz

and did not try to stop him.  (*Id.* at 3.)  He further alleges that COs Tita and Bailey

watched Bernett assault and choke Ortiz and did not try to stop him.  (*Id.*)

Ortiz alleges that he told Lt. Horsey what COs Bernett and Amazon did and

requested medical attention.  (*Id.*)  Horsey allegedly ignored his request and prepared a

false disciplinary write up.  (*Id.*)  Ortiz also alleges that Sgt. White watched CO

Amazon slamming Ortiz from door to door and instructed Amazon to "take it easy."

(*Id.*)  When Amazon ignored him, Sgt. White removed Ortiz from Amazon.  Sgt. White

also purportedly ignored Ortiz's request for medical care.  (*Id.*)

Ortiz claims that Major Martin assigned him to the Restricted Housing Unit

("RHU") where he spent a month without receiving a hearing. (*Id.* at 4)

Ortiz asserts a claim against Carney because he sent her a grievance and

received no response.  He also names the Philadelphia Department of Prisons and the

City of Philadelphia as Defendants because they are alleged to run the jail.  (*Id.*)

Based on the foregoing, Ortiz alleges excessive force claims against COs Bernett

and Amazon, failure to protect claims against COs Petel, Tita and Bailey, deliberate

indifference claims against Lt. Horsey and Sgt. White, a due process claim against

Major Martin, and what the Court understands to be claims against Carney in both her

individual and official capacities.  Ortiz also contends that he was "taunted by guards,"

but does not identify which guards or provide any details.  (*Id.* at 3.)  He also claims

that he "lost [his] property, legal paperwork," but does not identify which, if any, of the

Defendants was responsible for this.  (*Id.*)  He claims that unconstitutional policies and

hiring of unqualified guards and a failure to train existed, but does not identify a responsible party.  (*Id.*)  He requests a declaration that the Defendants violated the United States Constitution, and an award of compensatory and punitive damages.  (*Id.* at 4.)

## II

Because Ortiz appears to be unable to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Ortiz is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[4] Because Ortiz is a prisoner, under the provisions of the Prison Litigation Reform Act, he must still pay the full filing fee in installments.

III

The vehicle by which federal constitutional claims may be brought in federal

court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of

a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988).

A

Ortiz requests a declaration that the Defendants have acted violently and in

violation of the United States Constitution.  (ECF No. 14 at 4.)   However,

"[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also

not "meant simply to proclaim that one party is liable to another."  *Corliss v. O'Brien*,

200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574,

2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment

is available to define the legal rights of the parties, not to adjudicate past conduct

where there is no threat of continuing harm."). Ortiz's request for declaratory relief

must be dismissed accordingly.

B

Ortiz's claim against the Philadelphia Department of Prisons is based on his

assertion that the Department is responsible for running PICC.  As the United States

Court of Appeals for the Third Circuit has held, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983. *Russell v. City of Philadelphia*, 428 Fed. App'x 174, 177 (3d Cir. 2011) (citing 53 Pa. Con. Stat. Ann. § 16257; *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423 (E.D. Pa. 1998)); *see also Durham v. Philadelphia Prison Sys.*, Civ. A. No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25, 2018) (explaining that the "Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia.") (citing 53 Pa. Cons. Stat. Ann. § 16257).  Because the Philadelphia Department of Prisons is not considered a "person" for purposes of § 1983, *Durham*, 2018 WL 3105589 at *2 (citing *Peele v. Philadelphia Prison Sys.*, Civ. A. No. 12-4877, 2015 WL 1579214, at *2 (E.D. Pa. April 8, 2015)), Ortiz's claim against it is dismissed with prejudice.

C

Ortiz includes a claim against the City of Philadelphia and possibly an official capacity claim for money damages against Defendant Carney, who is alleged to be the Commissioner of Prisons.  (ECF No. 14 at 4.)  Claims against county and municipal officials named in their official capacity are indistinguishable from claims against the local government entities that employ them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  That is because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166.

6

To state a claim for municipal liability, a plaintiff must allege that the municipality's policy or custom caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v.*

7

*Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the Third Circuit stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Ortiz conclusorily alleges that unconstitutional policies, and a failure to train and hire qualified individuals existed at PICC. (ECF No. 14 at 3.) He does not describe these alleged deficiencies with any particularity, and does not tie them to the constitutional violations he is alleged to have suffered. The Court will therefore dismiss Ortiz's claim against Defendant Carney in her official capacity as not plausible. For the same reasons, the Court will dismiss Ortiz's claim against the City of Philadelphia. Because the Court cannot state with certainty that Ortiz will not be able to state a plausible claim, he will be permitted to amend this claim.

D

Ortiz also alleges that Defendant Carney ignored a grievance he sent her.

Claims based on the handling of prison grievances fail because "[p]rison inmates do not

have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145

F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x

186, 189 (3d Cir. 2009) (per curiam).  This claim will thus be dismissed with prejudice.

E

In his Amended Complaint, Ortiz states, without more, "lost my property, legal

work." (ECF No. 14 at 3.)  He does not identify which, if any, of the named Defendants

was responsible for this loss, does not describe the lost property, and does not describe

the circumstances surrounding the loss.  Even if he did, however, a prisoner detained

by a Pennsylvania County cannot state a Fourteenth Amendment claim based on the

loss of property.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n

unauthorized intentional deprivation of property by a state employee does not

constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

available.'" (quoting *Hudson*, 468 U.S. at 533)).  While the Pennsylvania Political

Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be

liable for any damages on account of any injury to a person or property caused by any

act of the local agency or an employee thereof or any other person," there are eight

exceptions to this grant of immunity.  *See id*. § 8542(b).  One such exception is that a

political subdivision like Philadelphia County may be held

> liable for damages on account of an injury to a person or property within
> the limits set forth in this subchapter if both of the following conditions

are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

Since Ortiz has under these provisions a meaningful postdeprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed.

To the extent Ortiz's reference to the lost property as "legal materials" indicates that he also seeks to raise a First Amendment access to the courts claim, that claim is also not plausible. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*,

536 U.S. at 415.  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id*.  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).  Ortiz does not allege that a nonfrivolous and arguable claim was lost due to the alleged loss or destruction of his legal materials.  Accordingly, this portion of his Amended Complaint must also be dismissed.

F

In his Amended Complaint, Ortiz alleges that he was "taunted by guards."  (ECF No. 14 at 3.)  He does not identify the alleged perpetrators, does not describe the nature of the taunts, and does not describe the circumstances surrounding them.  Even if he did, however, his allegation would not state a § 1983 claim because verbal threats or taunts, without more, are insufficient to violate the Constitution.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.")  This claim will be dismissed with prejudice.

11

G

Ortiz claims that he advised Lt. Horsey that he had been choked and punched by COs Bernett and Amazon and requested medical care, which Lt. Horsey refused. Ortiz also alleges that Sgt. White observed CO Amazon punching and slamming Ortiz and eventually removed Ortiz from Amazon. Ortiz alleges that when he requested medical care, Sgt. White also refused it. To state a constitutional claim based on the failure to provide medical treatment, a detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Ortiz alleges that as a result of CO Bernett choking him and slamming him to the ground, and CO Amazon punching him, he suffered lumps and swelling on his face and a nosebleed. Ortiz further alleges that Sgt. White, who observed and stopped CO Amazon's alleged assault on Ortiz, and Lt. Horsey, to whom Ortiz allegedly described COs Bernett and Amazon's treatment of him, both refused Ortiz's request for medical

---

[5] As it appears that Ortiz was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

treatment despite allegedly apparent injuries.  This is adequate to state a plausible deliberate indifference claim and this claim will be served for a responsive pleading.

H

Ortiz alleges that CO Bernett wrapped both hands around Ortiz's neck and squeezed and shook him violently, and that he pushed Ortiz to the ground. (ECF No. 14 at 1.)  Ortiz claims Bernett then pushed him around in his cell, demanding that Ortiz spit on him.  (*Id.* at 2.)  At or about the same time, CO Amazon is alleged to have punched Ortiz in the face 8 to 9 times while Ortiz was handcuffed and shackled.  (*Id.*)  Amazon is also alleged to have slammed Ortiz from door to door.  Ortiz alleges that he suffered lumps and swelling on his face and a nosebleed as a result of Bernett and Amazon's treatment.  (*Id.*)  Based on these allegations, Ortiz's Amended Complaint will be served on the COs for a responsive pleading.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (holding that the Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, 545 (1979) (noting that in *Bell* the Supreme Court explained that "pretrial detainees, who have not been convicted of any crimes, retain *at least* those constitutional rights that we have held are enjoyed by convicted prisoners.")).[6]

---

[6] The *Jacobs* Court noted that the United States Supreme Court has not yet determined whether pretrial detainees can bring excessive-force claims under the Fourth Amendment. *Id.* at 194, n.4 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 408 (2015) (Alito, J., dissenting)).

I

Ortiz contends CO Petel watched CO Amazon assault Ortiz and did not try to stop him.  (*Id.* at 3.)  He further alleges that COs Tita and Bailey watched CO Bernett assault and choke Ortiz and did not try to stop him.  (*Id.*)  He asserts a claim against these COs for failing to protect him.  Ortiz's allegations that these COs watched what COs Bernett and Amazon did and did not stop them states a plausible failure to protect claim.  *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (holding that the objective component of a Fourteenth Amendment claim requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) (deliberate indifference means that a defendant consciously disregarded a serious risk to the detainee's health or safety).  This claim will be served for a responsive pleading.

J

The Court understands Ortiz to be stating a due process claim based on Major Martin's placement of Ortiz in the RHU for a month without affording him a hearing.  "Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'"  *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per*

14

*curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)."  *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."  *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports," *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Ortiz alleges that Lt. Horsey prepared a false disciplinary write up and Major Martin placed Ortiz in the RHU, where he remained without a hearing.  These allegations state a plausible claim that he was not afforded the required due process in connection with his confinement to the RHU, and this claim will be served for a responsive pleading.

IV

For the reasons stated, Ortiz's application for leave to proceed *in forma pauperis* will be granted.  Ortiz will be permitted to proceed on his excessive force claims against Correctional Officers Bernett and Amazon, his failure to protect claims against Correctional Officers Petel, Tita, and Bailey, his deliberate indifference claims against Lt. Horsey and Sgt. White, and his due process claim against Major Martin.  The remainder of his claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Because Ortiz's municipal and official capacity claims will be dismissed without prejudice, Ortiz will be granted the option of filing an amended complaint to attempt to cure the defects identified herein.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  An Order follows, which shall be docketed separately.


**BY THE COURT:**


*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**

16